UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AMIN BOOKER,

                          Petitioner,

  v.                                                     9:23-CV-1418
                                                              (DNH/CFH)

J. NOETH, Superintendent of Attica
Correctional Facility,

                          Respondent.

---

APPEARANCES:                                            OF COUNSEL:

AMIN BOOKER
Petitioner, pro se
98-A-6245
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589

HON. LETITIA JAMES                          MICHELLE E. MAEROV, ESQ.
Attorneys for Respondent                     Ass't Attorney General
New York State Attorney General
120 Broadway
New York, NY 10271

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

    Petitioner Amin Booker seeks federal habeas relief pursuant to 28 U.S.C. § 2254.  Dkt.

No. 1, Petition ("Pet.").[1, 2]

On November 21, 2023, petitioner was granted leave to file a written affirmation explaining why the statute of limitations should not bar his petition. Dkt. No. 6, Decision and Order ("November Order"). Specifically, after noting petitioner's familiarity with the timeliness doctrine given his extensive federal habeas corpus litigation history, the Court concluded that "it [wa]s unclear when petitioner was made aware of the [alleged unconstitutional] sentencing computation." *Id.* at 5. Accordingly, the Court was unable to specifically determine the date the statutory limitations period began to ran. *Id.* Given the special solicitude granted to pro se litigants, the Court explicitly stated that it was making a generous assumption about the operative date, one which gave petitioner the maximum benefit when calculating the applicable statutory limitations period. *Id.* at 3-6.

Petitioner timely filed his affirmation. Dkt. No. 7, Petitioner's Affirmation (" Pet. Aff."). In it, petitioner agreed with the Court's liberal construction of the sequence of events which gave rise to the statutory limitations calculation and asserted that "[i]t is not disputed here, that [petitioner's] state conviction became final on October 22, 2019. Therefore, [petitioner] has one year (or until October 21, 2020) to timely file his habeas petition[.]" Pet. Aff. ¶ 2, Petitioner emphasized that he was not "challenging the actions of the Kings County,

---

[1] For the sake of clarity, citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[2] The instant petition was initially received in the Western District on or about January 22, 2021. *See Booker v. Noeth*, No. 1:21-CV-0126 (W.D.N.Y.) (*"Booker IV"*), Dkt. No. 1, Petition. The Western District entered an order transferring the case to this District on February 5, 2021. *Booker IV,* Dkt. No. 2, Transfer Order. Almost three years later, on November 13, 2023, petitioner wrote a letter seeking a status update. *Booker IV*, Dkt. No. 3. On November 15, 2023, the case was first opened in this District. *Booker IV*, Dkt. Entry dated 11/15/20; Dkt. Entry dated 02/05/21 (indicating that the transfer order was mailed to petitioner but the case was not actually transferred from one district to the other until 11/15/23); Dkt. No. 4 (confirming that the case was "electronically transferred [to the Northern District of New York] when [the] case opened.").

2

Supreme Court," but instead claims "that DOCCS exceeded its own jurisdiction when its agents administratively imposed a consecutive sentence term for two counts on [his] verdict, independently perfect its own version of a commitment order, changed [his] sentence from 25 years to life into 42 years to life." *Id.* ¶¶ 15, 17.

The Court then directed respondent to answer the Petition. Dkt. No. 8, Decision and Order ("January Order"). Presently before the Court is respondent's motion requesting to transfer the Petition to the Second Circuit as a successive petition. Dkt. No. 10. For the reasons which follow, respondent's motion is granted.

## II. RELEVANT BACKGROUND

On September 3, 1998, a Kings County Court sentenced petitioner to an indeterminate term of 25 years to life for second degree murder and a determinate 20 year sentence for second degree attempted murder. Dkt. No. 10-1 at 1. Those two sentences were ordered to run consecutively. *Id.* Further, petitioner was also sentenced to a determinate 7 year term for first degree reckless endangerment which was to run concurrently with his other sentences. *Id.*

On September 24, 1998, the Kings County Court resentenced petitioner to an indeterminate term of 3 ½ to 7 years on the reckless endangerment conviction because it was improper for that conviction to receive a determinate sentence. Dkt. No. 10-2 at 1; Dkt. No. 10-3 at 3. The problem with the resentencing order, as articulated in a memorandum authored by a DOCCS employee in the Office of Sentencing Review, is that:

> while the first sentence and commitment issued on September 3, 1998 indicated that the sentences for [Second Degree] Murder . . . and [Second Degree] Attempted Murder . . . were imposed to run consecutively to one another the amended sentence and

3

> commitment issued on September 24, 1998 was silent as to whether or not these two terms remains consecutive. The only part of the sentence and commitment form that speaks to this issue is form language in the middle of the sentence and commitment which reads "*the sentence on all Crimes is to run CONCURRENTLY unless otherwise indicated*" . . . Underneath said form language the line which would indicate what, if any, crimes were to run consecutively is left blank.

Dkt. No. 10-3 at 3. Consequently, when petitioner was received into DOCCS custody, on October 28, 1998, his murder and attempted murder sentences were running concurrently and his initial parole eligibility date was May 30, 2021. *Id.* at 3-4.

On March 16, 2001, the DOCCS Inmate Records Coordinator contacted Kings County for clarification on the ambiguous resentencing order and received direction that the intention of the county court was for the sentences to run consecutively to one another. Dkt. No. 10-3 at 4 (identifying the Inmate Records Coordinator's notation which says "See original commitment as to how 1 & 2 are to run"); *see also* Dkt. No. 10-4 (resentencing form with handwritten notation). Petitioner's parole eligibility was then recalculated and the adjusted date for his parole eligibility was July 18, 2038. Dkt. No. 10-3 at 4; *see also* Dkt. No. 10-5 (DOCCS's date computation sheet, dated April 9, 2001, though printed out on March 7, 2017, showing that petitioner's minimum term of incarceration was 42 years, one month, and eighteen days with a parole eligibility date of July 18, 2038). In sum, it was DOCCS' "understanding that the imposition of consecutive terms for [Second Degree] Murder . . . and [Second Degree] Attempted Murder . . . on the original sentence and commitment issued on September 3, 1998 [was] not affected or changed by the amended sentence and commitment issued on September 24, 1998," given the clarification and confirmation the Inmate Records Coordination received from Kings County Court in 2001. Dkt. No. 10-3 at 5.

While this is petitioner's third federal habeas corpus action, it is only the first, challenging petitioner's underlying 1998 state court criminal conviction from Kings County, that is relevant to the instant analysis. *See Booker v. Ricks*, No. 1:02-CV-6456 (E.D.N.Y.) ("*Booker I*"), Dkt. No. 44, Decision and Order (denying habeas petition).[3] The original petition in *Booker I*, filed in November of 2002, indicated that the length of petitioner's imposed sentences were 25 years to life. *Booker I*, Dkt. No. 1, Petition, at 1. A little over three years later, in February of 2006, petitioner successfully moved to amend his pleading, whereupon he indicated that the length of his imposed sentences were 45 years to life. *Booker I*, Dkt. No. 25 at 1. In the Decision and Order denying the Amended Petition, the Eastern District noted generally that petitioner "was sentenced to a total of 45 years to life in prison[,]" *Booker I*, Dkt. No. 44, Decision and Order, at 1, and specifically that

> [o]n September 3, 1998, [petitioner] was sentenced as a second felony offender to consecutive terms of imprisonment of 25 years to life on the murder count and 20 years on the attempted murder count. He was sentenced to seven years on the reckless endangerment count, to run concurrently with the other two sentences. [Petitioner] was re-sentenced on September 24, 1998 to three and one-half to seven years for the reckless endangerment count.

*Booker I*, Dkt. No. 44, Decision and Order, at 4. Petitioner unsuccessfully appealed the denial of his habeas petition to the United States Court of Appeals for the Second Circuit. *Booker I,* Dkt. No. 46, Notice of Appeal; *Booker I,* Dkt. No. 49, Mandate. Despite the Eastern District outlining that petitioner was sentenced to a total of 45 years as a result of his

---

[3] The second, challenging his 2015 conviction from multiple prison charges and his resulting disciplinary confinement, was filed in the Southern District of New York in 2016. *See Booker v. Chappius*, No. 1:16-CV-3410 (S.D.N.Y.) ("*Booker II*"). The action was subsequently transferred, and ultimately decided, in the Western District of New York. *Booker II*, Dkt. No. 2, Transfer Order; *Booker v. Chappius*, No. 1:16-CV-0446 (W.D.N.Y.) (*"Booker III"*), Dkt. No. 10, Decision and Order (dismissing claims as non-cognizable on habeas review).

5

consecutive and concurrent terms of imprisonment, petitioner never raised any arguments about his sentence in his appeal. *Booker I*, Dkt. No. 46.

In 2017, petitioner challenged the DOCCS computation of his sentence by filing an Article 78 proceeding in Albany County Court. Pet. at 13-14. Petitioner asserts that, despite the fact that DOCCS recalculated his sentence in 2001, he was never made aware that his minimum term of incarceration and earliest parole date were based upon his murder and attempted murder sentences running consecutively until he received the opposition papers in his Article 78 action. Pet. Aff. ¶¶ 20-21.

In the instant action, as in the original pleading in *Booker I,* petitioner stated he was sentenced to 25 years to life. Pet. at 1.

### III. DISCUSSION

Respondent argues that the instant action must be transferred because this Court lacks jurisdiction to decide the sentencing claim. Dkt. No. 10. Specifically, respondent asserts that, despite his representations, petitioner was both aware that DOCCS calculated his minimum term of incarceration and earliest parole date based on his murder and attempted murder sentences running consecutively and able to present his sentencing claim in his amended pleading in *Booker I*, Dkt. No. 10 at 4-5. Consequently, because *Booker I* challenged the same conviction and sentence, was decided on the merits, and could have included his sentencing claim, the present petition is successive and, as such, permission from the Second Circuit is first required before this Court can evaluate the claim's merits. *Id.*

Petitioner steadfastly claims that he had no knowledge that his murder and attempted murder sentences were not concurrent before he was in the middle of state court litigation in 2017. Pet. at 13-14; Pet. Aff. ¶¶ 20-21. Petitioner argues that DOCCS exceeded its

6

authority when it decided to consider his sentences consecutively, instead of concurrently, per the controlling resentencing order of commitment dated September 24, 1998, violating his constitutional rights.  Pet. Aff. ¶¶ 16-17.  Instead, petitioner advocates that the Court continue to utilize the generous and hypothetical timeline it proposed in the November Order.  Pet. Aff. ¶¶ 1, 21.

      The Antiterrorism and Effective Death Penalty Act (AEDPA) restricted the ability of petitioners to file second or successive petitions.  *Torres v. Senkowski*, 316 F.3d 147, 150 (2d Cir. 2003).  A petition is a second or successive application when it "attacks the same judgment that was attacked in a prior petition," *Vasquez v. Parrott*, 318 F.3d 387, 390 (2d Cir. 2003) (internal quotation marks omitted), the prior petition was dismissed on the merits, *Murray v. Greiner*, 394 F.3d 78, 81 (2d Cir. 2005), and the later petition "raises a claim that was, or could have been, raised in [the] earlier petition." *James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002); *accord, Adams v. Corcoran*, 416 F. App'x 84, 85 (2d Cir. 2011) ("While not every numerically second petition is considered a second or successive one, a dismissal on the merits . . . renders any subsequent petition second or successive within the meaning of AEDPA.") (internal quotation marks omitted).

      In such circumstances, the AEDPA requires individuals seeking to file a second or successive petition to obtain leave of the appropriate Court of Appeals for an order authorizing the district court to consider the second or successive application.  28 U.S.C. § 2244(b)(1)-(3); *see also* Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts ("Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2244(b)(3) and (4)."); N.D.N.Y. L.R. 72.4(c) ("Before a

7

second or successive application is filed in this Court, the applicant shall move in the Second Circuit Court of Appeals for an order authorizing the district court to consider the application."). The Second Circuit has directed "that when a second or successive petition for habeas corpus relief . . . is filed in a district court without the authorization by th[e Second Circuit] that is mandated by § 2244(b)(3), the district court should transfer the petition or motion to th[e Second Circuit] in the interest of justice pursuant to § 1631[.]" *Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996).

The Second Circuit has previously required a petitioner, making an identical challenge to how DOCCS computed his commitment time, to receive prior permission from the Circuit before filing a successive petition because his prior habeas action, which was decided on the merits, attacked the same underlying criminal conviction. *See Adams v. Corcoran*, 416 F. App'x 84 (2d Cir. 2011). Here, petitioner previously filed a pro se federal habeas action in the Eastern District challenging the same judgment of conviction, and sentences associated therewith, as this action. *Compare Booker I*, Dkt. No. 44, at 4-5 (detailing the procedural history of petitioner's state court criminal conviction and direct appeal for a 45 year to life sentence based on convictions for Second Degree Murder, Second Degree Attempted Murder, and First Degree Reckless Endangerment) *with* Pet. at 2, 5 & Pet. Aff. ¶¶ 15, 17 (emphasizing that he is challenging the execution of his criminal sentence arising from his 1998 conviction for Second Degree Murder, Second Degree Attempted Murder, and First Degree Reckless Endangerment). Further, the action was decided on the merits. *See Booker I*, Dkt. No. 44, at 10-27. Therefore, the present petition meets the first two elements for being successive.

Finally, despite petitioner's conclusory assertions otherwise, petitioner was aware of

8

how DOCCS intended to sentence him, at the latest, at the time he filed his amended petition in *Booker I*. This is illustrated by petitioner's own representations, first in his original petition that his sentence was 25 years to life – accounting for all concurrent sentences – and then in his amended petition where the time of that sentencing commitment increased to 45 years to life – accounting for the murder and attempted murder sentences running consecutive to each other.

Petitioner knowing the basis for his clarified sentencing range is further supported by the DOCCS date computation form, dated April 2001. *See Soto v. Superintendent*, No. 9:11-CV-223 GLS/TWD, 2014 WL 3819025, at *7 (N.D.N.Y. Aug. 4, 2014) (using the date on the DOCCS time computation form to inform when petitioner was made aware of his sentence computation in a habeas petition challenging DOCCS' calculation of his sentence). DOCCS had previously asserted, in *Adams*, that "DOC[C]S time computations are provided, as a matter of routine, to the inmate;" therefore, without controverting proof, it is reasonable to assume that any change to a prior computation would result in the inmate receiving notification of the updated date ranges for his incarceration. 416 F. App'x at 85. Therefore, since petitioner does not demonstrate, nor does the record reveal, how petitioner could not have discovered his modified time computation in the near five years' time between DOCCS' clarification and the filing of his amended pleading in *Booker I*, the Court concludes that petitioner did, indeed, know that DOCCS was basing his commitment dates on his first two sentences running consecutively.

Lastly, petitioner's knowledge is confirmed by the Eastern District's Order denying the petition in *Booker I*, which categorized petitioner's sentence as 45 years to life, without any objection from the petitioner in his subsequent appeal to the Second Circuit.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1. The Clerk transfer this petition to the United States Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1631, for a determination under 28 U.S.C. § 2244(b) as to whether petitioner should be authorized to file a second or successive habeas petition in the district court; and

2. The Clerk serve a copy of this Order on petitioner in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: February 12, 2024
Utica, New York.

_____
United States District Judge